**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Russell L. Koch and
Marie A. Koch,

Plaintiffs,

Civil No. 00-1270 RHK/RLE

v.

**MEMORANDUM OPINION AND ORDER**

Farm Service Agency f/k/a
Farmers Home Administration,

Defendant.

---

Daniel R. Bina, Bina Law Office, Pine City, Minnesota, for Plaintiffs.

Lonnie F. Bryan, Assistant United States Attorney, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

Plaintiffs Russell L. Koch and Marie A. Koch commenced this suit on May 10, 2000, in the Kanabec County District Court. On May 19, 2000, Defendant Farm Service Agency ("FSA") removed this matter to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1442(a)(1), or in the alternative, pursuant to 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1) ("Tucker Act"). Currently before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), or, in the alternative, for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(1), (b)(6).



FILED NOV 27 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD NOV 27 2000
DEPUTY CLERK

## BACKGROUND

In July of 1977, the Plaintiffs purchased real estate from Russell Koch's parents, Vera and Elmer Koch, by contract for deed. The Plaintiffs then gave a series of mortgages on the property to FSA in the amount of approximately $340,000. (Compl. ¶ 4.) In December of 1999, Elmer and Vera Koch served a Notice of Cancellation of Contract for Deed on the Plaintiffs. (Compl. Ex. B (Notice of Cancellation).) According to the Notice, the Plaintiffs had not paid on the contract for deed since 1984. (Id.) Elmer and Vera also served FSA with a Notice of Cancellation of Contract for Deed.

On January 5, 2000, Roylene Champeaux, Assistant United States Attorney, sent a letter to the Plaintiffs offering to release FSA's interest on the property for $120,000 in cash, payable within 30 days. (Compl. Ex. C (Letter from Ms. Champeaux to the Plaintiffs).) The terms of the letter also provided that the Plaintiffs, if they were interested in the offer, should contact Ms. Champeaux within seven days of the letter (i.e., by January 12, 2000) or the "United States will commence suit." (Id.) On January 14, 2000, Russell Koch called Ms. Champeaux and "told her [he] wasn't sure if [he] would be able to come up with that much money in such a short period of time." (R. Koch. Aff. ¶ 3.) On January 31, 2000, the Plaintiffs sent a certified check to Ms. Champeaux in the amount of $120,000. Accompanying the check was a letter from Plaintiffs' counsel stating that they "have decided to accept your offer to settle this matter pursuant to the terms outlined in your January 5, 2000 letter." (Compl. Ex. D.)

On February 2, 2000, Ms. Champeaux returned the check to Plaintiffs' counsel stating that, in her January 14 conversation with Russell Koch, he had told her that he had no ability to pay and that he could not settle the matter. (Compl. Ex. E (Letter from Champeaux to Plaintiffs).) On January 31, 2000, FSA, believing that the Plaintiffs had rejected its offer, payed Elmer Koch the sum of $193,973.52 in order to satisfy payment on the original contract for deed, making the original offer to the Plaintiffs ineffective. However, Ms. Champeaux also offered, in her February 2, 2000 letter, to reopen the negotiations with the Plaintiffs if Elmer Koch was willing to return the $193,973.52 FSA had paid him. Plaintiffs did not respond to the offer to reopen negotiations.

Plaintiffs request that the Court grant them a declaratory judgment, determining that the January 5 letter from Ms. Champeaux was an offer to release FSA's interest in the real estate of the Plaintiffs for $120,000, which was accepted by the January 31 letter from Plaintiffs' counsel. (Compl. ¶ 1-3 (Prayer for Relief).) Plaintiffs also request that the Court declare Plaintiffs the owners in fee simple of said real estate, and order FSA to deliver all documents, deeds and releases to effectuate its release of all claims on the real estate. (Id. ¶ 4.) Further, Plaintiffs request that FSA be "temporarily" restrained from commencing a foreclosure, ejectment, unlawful detainer or other legal proceedings against the Plaintiffs. (Id. ¶ 5.) Because this Court lacks subject matter jurisdiction, it will grant FSA's motion.

## ANALYSIS

### I. Rule 12(b)(1) Lack of Subject Matter Jurisdiction

#### *A. Standard of Decision*

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. U.S., 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss. See Osborn, 918 F.2d at 729 n.6. The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction. See Titus, 4 F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729 n.6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). See Titus, 4 F.3d 590 at 593; Osborn, 918 F.2d at 729 n.6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact

exist." Osborn, 918 F.2d at 730.

The Court determines that FSA is making a facial challenge to the Plaintiffs' Complaint. FSA argues that there is no federal statute that would grant this Court subject matter jurisdiction. The Plaintiffs, in response, invoke 5 U.S.C. § 702 (Administrative Procedure Act), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1346(a)(1) (the "Little Tucker Act") as the bases for this Court's subject matter jurisdiction.

***B. Administrative Procedure Act (APA): 5 U.S.C. § 702***

The Plaintiffs argue that Section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, provides the basis for this Court's subject matter jurisdiction because this section waives the United States' sovereign immunity for suits that request a remedy other than monetary relief.[1] (Pls.' Mem. in Opp'n to Def's Mot. to Dismiss at 4 ("Pls.' Opp'n Mem.").) Section 702 states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be

[1] FSA enjoys sovereign immunity, unless it has been waived, and "the terms of the consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 769-70 (1941).

entered against the United States . . . .

5 U.S.C. § 702 (emphasis added). Section 702 cannot, alone, confer subject matter jurisdiction on this Court.

Section 702 does not contain "an implied grant of subject matter jurisdiction permitting federal judicial review of agency action." Califano v. Sanders, 430 U.S. 99, 107, 97 S. Ct. 980, 985 (1977). Therefore, § 702 only waives the United States' sovereign immunity; jurisdiction must be based on another statute.[2] Furthermore, § 702 provides that: "Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Plaintiffs seek declaratory relief in the form of a judgment declaring the existence of a contract. However, as discussed below, 28 U.S.C. § 1346(a)(2), the "Little Tucker Act," grants consent to sue the United States for claims involving contracts with the United States but forbids the type of relief sought by Plaintiffs (i.e., declaratory judgment). See North Star Alaska v. United States, 14 F.3d 36, 38 (9th Cir. 1994) (finding that the APA does not waive sovereign immunity for contract claims seeking

---

[2] Typically, subject matter jurisdiction is based on 28 U.S.C. § 1331, which confers jurisdiction on the United States district courts over claims "arising under the Constitution, laws, or treaties of the United States." Thus, a plaintiff may avail itself of § 702's waiver of sovereign immunity by asserting jurisdiction under § 1331. However, as discussed below, the Plaintiffs' claim in this case does not arise under the Constitution, laws, or treaties of the United States and, thus, is not properly asserted under § 1331. Moreover, there is no statute that gives the district courts jurisdiction over actions solely because the United States is a defendant. See McQueary v. Laird, 449 F.2d 608, 610 (10th Cir. 1971).

equitable relief, which are within the Tucker Act and subject to its restrictions on relief) (quotations omitted); Transohio Sav. Bank v. Office of Thrift Supervision, 967 F.2d 598, 613 (D.C. Cir. 1992). Thus, under the Little Tucker Act, a district court may not grant declaratory relief for a breach of contract by the federal government – the sole remedy for this type of claim is monetary damages.[3] Sharp v. Weinberger, 798 F.2d 1521, 1523 (D.C. Cir. 1986), Eagel-Picher Indus., Inc. v. United States, 901 F.2d 1530, 1531 (10th Cir. 1990); Associated Fin. Corp. v. Kemp, 769 F. Supp. 398, 403 (D.C.D.C. 1991). Consequently, Plaintiffs may not rely on § 702 as the basis for subject matter jurisdiction or as a waiver of the federal government's sovereign immunity.

### *C. Federal Question Jurisdiction: 28 U.S.C. § 1331*

Section 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Plaintiffs argue that federal courts may review agency decisions under this "federal jurisdiction statute." (Pls.' Opp'n Mem. at 3.) However, questions of whether an agreement existed and whether a breach occurred are answered by resort to basic contract law. If a plaintiff's claim is "concerned solely with rights created within the contractual relationship and has nothing to do with duties arising independently of the contract" the claim is founded on contract. North Star Alaska, 14 F.3d at 37 (quoting North Side

[3] As the court in Associated Fin. Corp. v. Kemp held, when § 702 is read in conjunction with the Tucker Act, a claim for declaratory relief under a contract theory "proves fatal." Associated Fin. Corp. v. Kemp, 769 F. Supp. 398, 402 (D.C.D.C. 1991).

Lumber v. Block, 753 F.2d 1482, 1486 (9th Cir.1985) (citing Megapulse, Inc. v. Lewis, 672 F.2d 959, 967-68 (D.C. Cir.1982)). Because this claim arises under contract law and federal law is not an essential element of the claim, subject matter jurisdiction cannot be established by § 1331.

***D. Little Tucker Act: 28 U.S.C. § 1346(a)(2)***

Section 1491(a)(1) of Title 28 (known as the "Tucker Act"), states "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1). The jurisdiction conferred by the Tucker Act is exclusive with the United States Court of Federal Claims. Section 1346(a)(2) of Title 28, (known as the "Little Tucker Act"), gives concurrent jurisdiction to the district courts of cases with a monetary claim of less than $10,000 over which the United States Court of Federal Claims would normally have exclusive jurisdiction. 28 U.S.C. § 1346(a)(2). The rationale behind the Little Tucker Act is that for small monetary claims the parties should not have to bear the expense of litigating in Washington, D.C. See Bates Mfg. Co. v. United States, 303 U.S. 567, 571, 58 S.Ct. 694, 696 (1938); Kent v. United States, 228 F. Supp. 929, 931 (D.C.N.Y. 1964).

Plaintiffs contend that this Court has subject matter jurisdiction under the Little Tucker Act because the relief sought is a declaratory judgment. (Pls.' Opp'n Mem. at 7.) Plaintiffs cite to Bowen v. Massachusetts, 487 U.S. 879, 108 S. Ct. 2722 (1988), for the

proposition that district courts have jurisdiction over contract claims against the federal government for equitable relief. (Id. at 6.) However, Plaintiffs mischaracterize Bowen. The issue before the Court in Bowen was not whether the district court had subject matter jurisdiction, as in the instant case, but whether 5 U.S.C. § 702 allowed the district court to grant injunctive relief against the federal government. The district court already had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the case arose out of a dispute over Medicaid expenditures. Bowen, 487 U.S. at 905, 108 S. Ct. at 2737. Thus, the Bowen case is not instructive on this Court's subject matter jurisdiction analysis.

Plaintiffs further argue that it "appear[s] to be unanimous that the Tucker Act does not preclude federal district court suits for declaratory relief," and cite to two cases in support of this statement. (Pls.' Opp'n Mem. at 7 (citing Charter Federal Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203 (4th Cir. 1992); Southeast Kansas Comm. Action Program v. Secretary of Agric., 967 F.2d 1452 (10th Cir. 1992).) These cases indeed hold that a district court can grant declaratory relief against the federal government – but not under the Tucker Act. See Charter, 976 F.2d at 207 (holding that the Tucker Act does not forbid a district court from issuing a declaratory judgment with respect to contractual rights, but finding subject matter jurisdiction was proper pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1464(d)(1)(A)); Southeast Kansas Comm. Action Program, 967 F.2d at 1455-56 (holding that the case did not fall under the Tucker Act).

Even if the cases cited by the Plaintiffs are construed as holding that a district court may grant declaratory relief in a case involving a contract with the United States,[4] the clear weight of authority is that, if the claim arises out of a government contract (and hence under the Tucker Act), the district court cannot grant such relief. See Thornton, 420 U.S. at 140, 95 S. Ct. at 854; Richardson v. Morris, 409 U.S. 464, 465, 93 S. Ct. 629, 631 (1973); Lake Mohave Boat Owners Ass'n v. National Park Serv., 78 F.3d 1360 (9th Cir. 1995); Motorola, Inc. v. Perry, 917 F. Supp 43 (D.D.C. 1996); see also Wright and Miller, 14 Fed. Prac. & Proc. Juris. 3d § 3657 ("the cases have reiterated the point time and time again, that the Tucker Act authorizes suits against the United Sates only for money damages, not for declaratory [relief] . . . .").

The Tucker Act and the Little Tucker Act, contrary to Plaintiffs' assertion, do not confer jurisdiction upon either the United States Court of Federal Claims or the district courts to grant equitable relief. See Lee v. Thornton, 420 U.S. 139, 140, 95 S. Ct. 853, 854 (1975) ("The Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief."). Consequently, the Plaintiffs' claims for declaratory and injunctive relief cannot properly be brought in this Court under the Little Tucker Act.

---

[4] The cases cited by Plaintiffs are cases in which the claims merely reference a contract with the United States. Cases that require some reference to or incorporation of a contract, however, are not necessarily on the contract and therefore under the Tucker Act. Wright and Miller, 14 Fed. Prac. & Proc. Juris. 3d § 3657; Megapulse, Inc. v. Lewis, 672 F.2d 959, 217 (D.C. Cir. 1982). Only actions against the United States that are at its essence contract claims are within the Tucker Act. Id.

Because this case is "concerned solely with rights created within the contractual relationship and has nothing to do with duties arising independently of the contract," and Plaintiffs have not asserted a claim of right based on a statute, the claim must be brought, if at all, in the United States Court of Federal Claims.[5] North Side Lumber, 753 F.2d at 1486. However, the Plaintiffs may not seek a declaratory judgment from the United States Court of Federal Claims, as the sole remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), or if the claim is less than $10,000, in the district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).[6]

**CONCLUSION**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED THAT:**

(1) Defendant Farm Service Agency's Motion to Dismiss (Doc. No. 11) is **GRANTED**; and

---

[5] Plaintiffs argue that this Court has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. However, this Act does not create subject matter jurisdiction in cases where the court has no independent basis for jurisdiction. See Schilling v. Rogers, 363 U.S. 666, 676 80 S. Ct. 1288, 1295 (1960).

[6] Because the Court does not have subject matter jurisdiction over this case, FSA's motion to dismiss pursuant to Rule 12(b)(6) has not been addressed.

(2) the Complaint is **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 26, 2000

Richard H. Kyle
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: NOV 27 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995